**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Mark Michelson, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-9361 |
| | ) | |
| v. | ) | Judge John Robert Blakey |
| | ) | |
| Accertify, Inc., American Express | ) | |
| Company, and Mark Michelon, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Mark Michelson sued Defendants Accertify, Inc. ("Accertify"), American Express Company ("American Express"), and Mark Michelon, alleging Sarbanes-Oxley Act ("SOA") retaliation (Count I), Consumer Financial Protection Act ("CFPA") retaliation (Count II), and retaliatory discharge (Count III). [1]. Defendants now move for summary judgment. [36]. For the reasons explained below, this Court grants Defendants' motion.

## I. Background[1]

Accertify, a provider in fraud risk mitigation, chargeback management, and digital identity solutions, constitutes a wholly owned subsidiary of American Express, a financial services corporation.[2] [49] ¶¶ 1, 2. Plaintiff served as Director of

---

[1] The Court draws these facts from Plaintiff and Defendant's Rule 56.1 Statements of Facts [38], [48], including exhibits, and the parties' responses thereto [49], [52], where supported.

[2] In 2024, American Express sold Accertify to a private equity firm. [49] ¶ 4.

Chargeback Onboarding at Accertify, where he was subject to American Express' policies, procedures, and benefits plans. *Id.* ¶¶ 15, 16. In his role, Plaintiff generated code, worked with banks to address and remedy disputed charges, and reported to Paul Mangino, Vice President of Client Success at Accertify and Vice President of Client Management at American Express. *Id.* ¶¶ 17, 19.

Between 2014 and 2022, Plaintiff worked with Sasil Ripaldi, an employee of Strategic Impact Solutions, Inc. ("Stratis"), an Accertify vendor. *Id.* ¶ 20. In May 2022, Plaintiff learned Ripaldi received a job offer from another company and planned to resign from Stratis. *Id.* ¶ 21. Hoping to continue his working relationship with Ripaldi, Plaintiff offered Ripaldi an open position at Accertify/American Express. *Id.* ¶ 22. Knowing his job offer paid less than Ripaldi's competing offer, Plaintiff asked Mangino if Accertify/American Express could increase the compensation offer to Ripaldi. *Id.* Mangino told Plaintiff he could not. *Id.*

Undeterred, Plaintiff, together with Stratis, devised a scheme to make up the difference in pay. *Id.* ¶ 23. Under the scheme, Ripaldi would collect her compensation from Accertify/American Express *and* monthly "bonus" payments from Stratis, which Stratis would then bill back to Accertify/American Express. *Id.* To this end, Stratis sent Accertify/American Express a monthly invoice for services, which included Ripaldi's bonus, labeled "Staff Support." *Id.* ¶¶ 28, 29. Plaintiff approved each monthly invoice by email, and Stratis would then send each to Accertify for final approval and payment. In total, from July 2022, when the Ripaldi scheme started, through November 2022, Stratis paid Ripaldi $13,800.97. *Id.* ¶ 26.

2

In February 2023, it became clear that Plaintiff believed these pass-through payments to Ripaldi would continue only through the end of 2022, while Ripaldi believed the payments would be made through June 2023. As a result, Plaintiff, looking for help, confessed the scheme to Mangino. *Id.* ¶ 31. Alarmed by Plaintiff's disclosure, Mangino in turn took the matter to Mark Michelon, President at Accertify and Vice President and General Manager at American Express. *Id.* ¶¶ 5, 33.

On February 14, 2023, worried that Plaintiff's billback scheme violated company policy, Michelon escalated the issue to Kelley Joy, then-Vice President Colleague Strategic Partner at American Express and part of the Colleague Experience Group ("CEG"). *Id.* ¶ 34. The following day, on February 15, 2023, Joy discussed the scheme with Victor Ayala, manager of the Colleague Labor and Relations group ("CLR"), who said the Internal Audit Group ("IAG") may need to be involved due to "potential fraud" in the scheme. *Id.* ¶ 35. That same day, Joy contacted Lavinel Lotrean, Director of Fraud and Special Investigations at American Express, who referred the issue to the IAG for investigation. *Id.* ¶ 36.

In an unrelated matter, in April 2023, Plaintiff told Michelon and Mangino that he believed an Accertify salesperson was "lying" to customers about the time it would take to implement Accertify's chargeback solutions, and that he thought the conduct was "not right." [52] ¶¶ 3, 7. Plaintiff was concerned that the actual implementation periods for Accertify's chargeback solutions exceeded the timelines sales staff communicated to customers. *Id.* To investigate Plaintiff's concerns, Michelon contacted the Accertify salesperson Plaintiff referenced, who denied

promising or committing to specific timelines and acknowledged the fluidity of implementation schedules. [52] ¶ 11; [38-3] ¶ 30. Michelon concluded there was no basis to escalate Plaintiff's concerns. *Id.*

Finding Plaintiff's concerns to be unfounded, neither Mangino nor Michelon ever relayed Plaintiff's timeline concerns up the chain of command in American Express. [49] ¶¶ 70, 73. Joy and the CLR also never learned of Plaintiff's concerns over the course of the internal investigation. *Id.* ¶¶ 70–74; [52] ¶ 10. After American Express learned of Plaintiff's concerns in his demand letter, a separate IAG investigation into the timeline concerns found Plaintiff's allegations were unsubstantiated. [49] ¶¶ 77–79.

In May 2023, Michelon contacted colleagues at American Express and IAG to discuss the Stratis investigation, stating there was "some urgency to put the investigation to bed." [52] ¶¶ 14, 15. Additionally, during Michelon's June 13, 2023 interview with IAG, Michelon said he would "take opinion from the committee to stay consistent with the company" on IAG's final recommendation as to Plaintiff, to which the investigator said, "it is ultimately your decision." [49] ¶ 49; [52] ¶ 17. Michelon responded, "we need to stay consistent." [52] ¶ 17.

On or around June 27, 2023, American Express' CLR and CEG met to review the IAG investigation's preliminary findings concerning Plaintiff's billback scheme with Ripaldi. [49] ¶¶ 43–45. In this meeting, Joy, CLR, and CEG recommended that the company fire Plaintiff. *Id.* On July 17, 2023, Joy met with Mangino, informing him of CLR and CEG's recommendation. *Id.* ¶ 48.

Three days later, IAG issued its final report in which IAG "substantiated" concerns that Plaintiff approved the billback payments to Ripaldi to supplement her salary. *Id.* ¶ 51. IAG determined that Plaintiff "knowingly approved" the payments to Ripaldi and "purposely did not disclose this arrangement." *Id.* ¶ 52. Based upon these findings, IAG recommended Plaintiff be terminated. *Id.* On July 27, 2023, Mangino met with Plaintiff to tell him the company was terminating his employment. *Id.* ¶ 53.

On October 2, 2024, Plaintiff sued, arguing that his termination violated the SOA, the CFPA, and Illinois law. *See* [1]. Defendants now seek summary judgment, arguing that they remain entitled to judgment as a matter of law on all counts, [36].

## II.    Legal Standard

Summary judgment may be properly granted where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On a motion for summary judgment, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v.*

*Fitzgerald Equip. Co.*, Inc., 910 F.3d 1016, 1021–22 (7th Cir. 2018). To meet this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019). A mere "scintilla of evidence" supporting the non-movant's position does not suffice; rather, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III. Discussion

Defendants Accertify, American Express, and Michelon, argue that they are entitled to judgment as a matter of law on all claims because: (1) Accertify fired Plaintiff for a legitimate, non-retaliatory reason; (2) Plaintiff does not qualify as a whistleblower and did not engage in protected activity; and (3) no causal connection exists between his purported "complaints" and his termination. *See* [36], [37]. Defendant Michelon also argues that he cannot be held individually liable. [37] at 16.

Plaintiff concedes that his CFPA retaliation claim fails as to all Defendants and that his retaliatory discharge claim fails as to Defendant Michelon, *see* [50] at 2, and the Court thus grants summary judgment in Defendants' favor on Count II and on Count III as to Defendant Michelon at the outset. Plaintiff disputes Defendants' entitlement to judgment as to the remaining claims, however, and the Court thus considers the remaining counts in turn.

### A. SOA Retaliation

Under the SOA's whistleblower protections, no employer may "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment." 18 U.S.C. § 1514A. This protection extends to employees who lawfully act "to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes" securities fraud, a violation of any rule or regulation of the SEC, or any federal law relating to fraud against shareholders. *Harp v. Charter Communications, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009) (citing 18 U.S.C. § 1514A(a)).

To prevail on a whistleblower claim under SOA, Plaintiff must prove by a preponderance of the evidence that: (1) he engaged in protected activity; (2) the employer knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. *Harp*, 558 F.3d at 723. Plaintiff must actually have believed that the employer's actions violated the law and that his belief must have been objectively reasonable. *Id.* Objective reasonableness is assessed "based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Id.*

Plaintiff fails to establish the first element of his prima facie case. Plaintiff argues he engaged in SOA-protected activity by raising concerns of "wire fraud" over the implementation timelines. Yet the record evidence shows that when Plaintiff

spoke to Michelon and Mangino, Plaintiff cited only an internal code of conduct issue prohibiting "lying to customers," and that it meant "huge money" for Accertify/American Express customers. [38-4] 71:10–72:2. When speaking to his supervisors, Plaintiff never actually connected his concerns to forms of fraud covered under SOA and never mentioned any law the challenged conduct allegedly violated. Instead, the record confirms that Plaintiff only alerted his supervisors to a violation of Accertify's own code of conduct, but "violations of internal company protocol" are not "fraud" under SOA. *Verfuerth v. Orion Energy Systems, Inc.*, 879 F.3d 789, 793 (7th Cir. 2018). Though Plaintiff later testified that he believed the conduct was also "illegal," nothing in the record supports the assertion that Plaintiff held that belief at the time he spoke to Michelon or Mangino and otherwise communicated that belief to them. *Del Signore v. Nokia of Am.*, No. 20 C 4019, 2021 WL 12302269, at *6 (N.D. Ill. Jan. 27, 2021) (plaintiff's belief of wire fraud not formed "until after proceedings began" cannot establish protected activity). Here, Plaintiff fails to establish a prima facie case under SOA.

Moreover, even if Plaintiff could have established all four elements of a prima facie case, Defendants are nonetheless entitled to judgment, because they have established through clear and convincing evidence that they would have terminated Plaintiff even in the absence of any protected behavior. *Harp*, 558 F.3d at 727 (citing *Allen v. Administrative Review Bd.*, 514 F.3d 468, 475–76 (5th Cir. 2008)). Plaintiff never disputes that he, together with Stratis, devised the scheme to pay Ripaldi beyond her base compensation and to bill those payments back to Accertify/American

8

Express, even after being told that the company could not pay her more than the offered salary. Plaintiff also does not dispute that Joy and the IAG substantiated concerns that Plaintiff's scheme violated Accertify/American Express policy and ultimately recommended Plaintiff be terminated based upon this scheme. Nor does Plaintiff dispute that the internal team investigating Plaintiff's misconduct never learned of his concerns about implementation timelines.

Plaintiff insists that, despite his violation of company policy, his termination was still ultimately retaliatory because Michelon possessed retaliatory animus. [50] at 10. In this regard, Plaintiff first points to the timing. A month after Plaintiff's initial complaint about the implementation timelines, Michelon requested that IAG put the Stratis scheme investigation "to bed" after several months of inactivity. [52] ¶¶ 14–16. Plaintiff also states that he reiterated his timeline concerns on July 20, 2023, and was terminated seven days later. [50] at 10. This timing "alone," Plaintiff argues, "creates a jury question. *Id.* Yet speculation "based on suspicious timing alone . . . does not support a reasonable inference of retaliation." *Sauzek v. Exxon Coal USA*, 202 F.3d 913, 918 (7th Cir. 2000). Plaintiff points to no facts suggesting Michelon was motivated by retaliatory animus, and instead, Plaintiff relies on pure speculation. Plaintiff concedes he has no knowledge of how IAG conducts or prioritizes investigations or works through its backlogs, and no information about any specific timeline IAG follows in its investigations. [49] ¶¶ 39–41. Moreover, IAG issued its final report recommending Plaintiff be terminated nearly three weeks before Plaintiff raised his timeline concerns on July 20, 2023. Defendants have

9

demonstrated that Plaintiff's termination was unrelated to his implementation timeline concerns.

Plaintiff also argues that Michelon's retaliatory animus can be inferred because Michelon did not "investigate or escalate serious fraud allegations to compliance, legal, or IAG" after Plaintiff raised his implementation timeline concerns. [50] at 11. But Michelon did not investigate "serious fraud allegations" because the record shows Plaintiff did not bring such allegations to Michelon. Instead, Plaintiff raised his concerns about a possible internal code of conduct violation and expressed discomfort over the implementation timelines communicated to clients. In response, Michelon spoke with the relevant sales staff and concluded there were no policy violations—a finding IAG later substantiated in its own investigation.

As "the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citations omitted). Here, Plaintiff has not, relying on speculation alone to argue retaliatory animus.

Accordingly, the Court grants Defendants' motion as to Count I.

## B. Retaliatory Discharge

To state a claim for retaliatory discharge under Illinois law, a plaintiff must allege that: (1) he was discharged; (2) in retaliation for his activities; and (3) the

discharge violates a clear mandate of public policy. *Shamin v. Siemens Industry, Inc.*, 854 F. Supp. 2d 496, 509 (N.D. Ill. 2012). As to the third element, Illinois courts have limited retaliatory discharge claims to terminations in retaliation for filing claims under the Illinois Workers Compensation Act and in retaliation for whistleblowing. *Shamin*, 854 F. Supp. 2d at 510; *see also Julin v. Advanced Equities*, No. 13 C 9075, 2015 WL 1810329, at *4 (N.D. Ill. Apr. 17, 2015).

Plaintiff's retaliatory discharge claim fails for the same reasons his SOA claim fails. The requirement that "the discharge be in retaliation for plaintiff's activities requires that a plaintiff establish a causal relationship between the employee's activities and the discharge." *Michael v. Precision Alliance Group, LLC*, 21 N.E.3d 1183, 1188 (Ill. 2014). Plaintiff has the burden of affirmatively showing that the discharge was primarily in retaliation for his exercise of a protected right. *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1158 (7th Cir. 2019). Here, Plaintiff not only fails to demonstrate that he blew the whistle on unlawful activity, but he also fails to show that his firing had anything to do with whistleblowing. Instead, he relies upon speculation to argue that Michelon wanted him terminated because he expressed concerns over the implementation timelines. Such speculation alone fails to establish causation, as Plaintiff "has not provided evidence affirmatively showing" that Defendants fired him because he alerted to the company to inaccurate implementation timelines. *Id.*

In contrast, Defendants have established—and Plaintiff does not dispute— that the internal investigation team never learned of Plaintiff's concerns and that the

11

final IAG report found Plaintiff should be fired for violating company policy by implementing a sneaky billback scheme to pay Ripaldi more than the company agreed to pay her. Thus, Plaintiff fails to show a causal relationship between his concerns and his firing, and the Court grants Defendants' motion as to Count III.

## IV.  Conclusion

For the reasons explained above, the Court grants Defendants' motion for summary judgment [36] and directs the Clerk to enter final judgment in favor of Defendants on all counts. Civil case terminated.

Dated: July 22, 2026                                    Entered:

_____

John Robert Blakey
United States District Judge

12